Stephen D. Finestone (Cal. Bar. No. 125675)
Michael J. Coffino (Cal. Bar No. 88109)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.: (415) 421-2624
Fax: (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: mcoffino@fhlawllp.com

Attorneys for Plaintiff Join Digital, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| Join Digital, Inc.<br><br>    Plaintiff.<br><br>Pivium, Inc.<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Join Digital, Inc. ("Join Digital") alleges as follows:

## I. Summary of Action

Join Digital and Defendant Pivium, Inc. ("Pivium") entered into a contract that required Pivium to install state of the art office audio visual systems in eleven business offices in San Francisco earmarked for use by a Join Digital customer. Pivium, however, turned in a problem-plagued performance and substantially missed the completion date, requiring major remedial clean up to fix the mess Pivium left. In addition, as the project began its deep decline, rather than rise to the occasion, Pivium wrongfully interfered with the Join Digital customer. The defective contractual performance and wrongful behavior inflicted substantial financial harm on Join Digital and damaged its customer relationship, and reduced the prospects for additional business with other building tenants.

1

JOIN DIGITAL COMPLAINT

**II. Parties**

1. Join Digital is a Delaware corporation with its principal place of business in California.

2. Join Digital develops and sells networking software and associated hardware delivered as a cloud service to medium sized and large enterprises, as well as owners of commercial office buildings.

3. Pivium is an Arizona corporation with its principal place of business in Phoenix, Arizona.

4. Pivium holds itself out to the general public as a nationwide full-service design and integration company that provides integrating technology, content, and modern audio-visual products for work spaces. Pivium touts their design audio visual solutions as enhancing the human experience by working "tirelessly with facility owners, designers and project staff to ensure" that their work meets "the needs of the project no matter the space." Pivium claims that "it is the design and not the technology" that is the essential factor in the ultimate experience of a space.

**III. Jurisdiction and Venue**

5. The amount in controversy in this matter exceeds $75,000 and thus the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

**IV. General Allegations**

7. In March 2023, based on Pivium's written proposal, Join Digital and Pivium entered into a written contract for the provision of extensive audio-visual design product services (the "Contract"), which is attached as Exhibit 1.

8. The Contract included a scope of work detailed in a series of promises and warranties that Pivium made regarding display, provision, and installation of audio-visual functional

components for eleven office spaces for a Join Digital customer: a boardroom, a medium conference room, and nine small conference and huddle rooms at 655 Montgomery Street, San Francisco (the "Project").

9. Pivium also promised at the conclusion of the Project to provide an as-built system documentation and a control system, windowing configuration and DSP control code, as well as equipment MAC addresses for IP address assignment and DHCP reservations working with the IT coordinator of the Join Digital customer.

10. As part of the Project, Pivium promised to conduct preventive maintenance during standard business hours scheduled thirty days in advance that included, among other things, a "thorough inspection" of each system the contract covered, resolution of any issues the inspection identified, and a "thorough cleaning" of system components.

11. Pivium agreed to provide extensive maintenance services "upon substantial completion [of the Project]" for a period of thirty-six months.

12. The Project completion date was August 1, 2023, which would allow Join Digital to train its client in the use of the technology on August 7, 2023. Pivium understood that Join Digital and its customer were relying on Pivium to timely deliver what it promised. Pivium represented it was "committed to providing a first class project completion."

13. The Project eventually devolved into a disaster. Among others, the Project suffered these problems:

   a. Pivium improperly installed and delivered several defective hardware items.

   b. Pivium failed to set display resolution on screens correctly, creating an unprofessional and unacceptable appearance.

   c. Pivium improperly installed power and electrical systems.

   d. Pivium failed to provide manuals for hardware needed for customer training.

e. Pivium left spare and uninstalled parts and trash scattered about as an emblem of its unprofessionalism.

f. Pivium installed and charged Join Digital for unnecessary, superfluous equipment.

g. Pivium's lack of skills and incompetence led to numerous technology errors, including frozen screens and poor resolution and poor functionality.

h. Pivium incorrectly installed microphones in the boardroom space.

i. Pivium's work was riddled with poor, unprofessional quality.

j. Pivium's communication throughout the Project deployment was choppy, inconsistent, and unclear, exacerbating the sundry performance issues.

k. Pivium went around the back of Join Digital and contacted its customer directly to interfere with its relationship and complain about the lack invoice payment from Join Digital as Join Digital was trying to salvage the mess Pivium had created and respond to customers complaints regarding Pivium's poor performance.

l. Pivium sold Join Digital superfluous equipment to inflate its revenue, which required that Join Digital spend time and money to de-install the equipment.

m. Pivium failed to cure the many problems it created.

n. Pivium missed the Project deadline of August 1, 2023.

o. Pivium did not provide the promised maintenance services.

14. An example that is representative of Pivium's shoddy work product is its installation of microphones in the customer's boardroom, an all-important space for customer operations. Rather than install the microphones in accordance with manufacturer specifications and instructions (and sheer common sense), Pivium took it upon itself to install the microphones at a location in the boardroom—well behind the conference table where people sit—where the microphones could not function effectively. This ineptness required Join Digital to retain another vendor to relocate the microphones—above the conference table—where voices during meetings can reach the entire room effectively, at substantial cost.

15. Two months after the Project deadline, Pivium still had not finished what it had promised, requiring Join Digital to devote significant hours to complete the Project and train its customer, which created a substantial delay in delivering functional spaces to the customer. To make matters worse, over the following year, additional problems arose with Pivium's work product that required retention of a new vendor to fix them.

16. Pivium effectively abandoned the Project in October 2023 before it was even functional, despite its promise to provide three-years of post-project services in the Contract.

17. Join Digital relied on Pivium's purported expertise that their design and product selections were state of the art and would result in the best possible customer experience for Join Digital's customer.

18. Pivium's unprofessional performance and wrongful conduct compromised the development and expansion of Join Digital's relationship with its end user customer and undermined new commercial opportunities with other tenants.

**First Claim for Relief**
**(Breach of Contract)**

19. Join Digital incorporates by reference each of the preceding allegations as though fully set forth in this paragraph.

20. As alleged in the preceding paragraphs, including paragraphs 13 and 14, Pivium materially breached the Contract.

21. Join Digital has performed all its obligations under the Contract with Pivium except those for which performance was by law excused.

22. Because of Pivium's various breaches of contract, Join Digital had to perform substantial remedial work, including retaining a replacement vendor to complete the Project, to redo Pivium's failed work product, a direct and proximate result of which Join Digital suffered monetary damages in excess of the jurisdictional limit.

**Second Claim for Relief**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

23. Join Digital incorporates by reference each of the allegations in paragraphs 1 through 18 as though fully set forth in this paragraph.

24. By virtue of California law, the Contract included an implied covenant of good faith and fair dealing.

25. Join Digital has performed all its obligations under the Contract with Pivium except those for which performance was by law excused.

26. Pivium's unprofessional and wrongful conduct in communicating with the Join Digital customer unfairly interfered with the benefits under the Contract for Join Digital and breached the covenant of good faith and fair dealing.

27. As a proximate result of Pivium's conduct, Join Digital has suffered financial injury in an amount to be established at trial but in excess of the jurisdictional requirement.

**Third Claim for Relief**
**(Breach of Express Warranty)**

28. Join Digital incorporates the allegations of paragraphs 1 through 18 as though full set forth in this paragraph.

29. Pivium is in the business of providing the type of audio-visual technology design it promised to provide in the Contract and holds itself out as possessing special knowledge and skill in that market niche.

30. Pivium knew that the design product it warranted under the Contract was not only integral to the agreement of the parties but also was earmarked for use by a specified Join Digital customer in several suites of workspace at 655 Montgomery Street in San Francisco.

31. Pivium knew that Join Digital, in entering into the Contract, intended to, and Join Digital did, rely upon the special knowledge and skills that Pivium claimed to possess.

32. The design product that Pivium provided did not perform as Pivium warranted, constituting a breach of express warranty.

33. Join Digital took reasonable steps to notify Pivium of the problems with its design product, which Pivium in response failed to correct or remedy.

34. The failures of the Pivium design were a substantial factor in causing financial injury to Join Digital.

**Fourth Claim for Relief**
**(Breach of Implied Warranty)**

35. Join Digital incorporates the allegations of paragraphs 1 through 18of this complaint as though full set forth in this paragraph.

36. Pivium knew that the design product it promised to provide under the Contract was not only integral to the agreement of the parties but also was earmarked for use by a specified Join Digital customer in several suites of workspace at 655 Montgomery Street in San Francisco.

37. Among other claims, Pivium claims to possess "years of engineering experience to help (customers) design and install effective content distribution systems that work" and "the knowledge and experience required to design and build highly reliable video systems that can receive content from a variety of sources and deliver it in a variety of ways as the situation demands."

38. Pivium knew that Join Digital, in entering into the Contract, intended to rely upon the special knowledge and skills that Pivium claimed to possess.

39. Join Digital justifiably relied on the promised skill and judgment of Pivium in entering into the Contract.

40. The design product Pivium sold Join Digital was not fit for the purpose for which Join Digital intended, constituting a breach of implied warranty.

41. Join Digital took reasonable steps to notify Pivium of the problems with its design product, which Pivium in response failed to correct or remedy.

42. The unsuitability of the Pivium design product was a substantial factor in causing financial injury to Join Digital.

## Prayer for Relief

Join Digital requests the following remedy awards:

1. Economic damages according to proof;
2. Incidental damages according to proof;
3. Consequential damages according to proof;
4. Costs and expense.

## Demand for Trial By Jury

Join Digital demands that its claims be tried to a jury.

Dated December 17, 2024

FINESTONE HAYES LLP

/s/ Stephen D. Finestone
By: Stephen D. Finestone
Attorneys for Plaintiff Join Digital, Inc.